UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| JULIE J. MARTIN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>NANCY A. BERRYHILL, Deputy Commissioner for Operations, performing duties and functions not reserved to the Commissioner of Social Security,<br><br>　　　　Defendant. | Case No. ED CV 17-00938-DFM<br><br>MEMORANDUM OPINION AND ORDER |

　　Julie J. Martin ("Plaintiff") appeals the Commissioner's final decision denying her application for Social Security Disability Insurance Benefits ("DIB"). For the reasons discussed below, the Commissioner's decision is affirmed and this matter is dismissed with prejudice.

**I.**

**BACKGROUND**

　　Plaintiff filed an application for DIB alleging disability beginning on August 12, 2011. See Administrative Record ("AR") 151-57. After her

application was denied, she received a hearing before an administrative law judge ("ALJ"). See AR 88-92, 96-101, 102. The hearing took place on September 1, 2015. See AR 38-60. The ALJ heard testimony from a vocational expert ("VE") and Plaintiff, who was represented by counsel. See id.

On September 18, 2015, the ALJ denied Plaintiff's claim. See AR 19-37. The ALJ found that Plaintiff had severe impairments of hypertension, diabetes with diabetic neuropathy, left knee osteoarthritis, and obesity. See AR 24-27. The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to:

> Perform light work . . . except lifting and/or carrying 20 pounds occasionally and 10 pounds frequently; sitting, standing, and/or walking each no more than six hours out of an eight-hour workday, for a total of eight hours out of an eight-hour workday; if sitting, standing and stretching every few seconds every 30 minutes; if on feet, has to sit for a few seconds every 30 minutes; no more than frequently using the left lower extremity to push; occasionally climbing, crouching, stooping, kneeling, or crawling; no constantly using hands; requiring ready access to the bathroom; in addition to breaks every two hours, two additional bathroom breaks of up to five minutes, every day; no forceful gripping or grasping; and no more than moderately complex tasks.

AR 27-28. Based on the VE's testimony, the ALJ found that Plaintiff could perform her past relevant work as an administrative clerk and receptionist and thus concluded that she was not disabled. See AR 32-33.

The Appeals Council denied review of the ALJ's decision, which became the final decision of the Commissioner. See AR 1-6. Plaintiff then sought review in this Court. See Dkt. 1.

///

# II.
# DISCUSSION

Plaintiff argues that the ALJ improperly discounted Plaintiff's testimony about her symptoms. See Dkt. 25, Joint Stipulation ("JS") at 4.

## A. Applicable Law

To determine whether a plaintiff's testimony about subjective symptoms is credible, an ALJ must engage in a specific two-step analysis. See Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009) (citing Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). First, the ALJ must determine whether the plaintiff has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the alleged pain or other symptoms. See Lingenfelter, 504 F.3d at 1036. If the plaintiff meets the first step and there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for discrediting the plaintiff's complaints. See Robbins v. Soc. Sec. Admin, 466 F.3d 880, 883 (9th Cir. 2006). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the [plaintiff's] complaints." Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) (as amended) (citation omitted).

## B. Relevant Facts

Plaintiff testified at the hearing that she stopped working after she stood up from her desk and "stood, . . . twisted, and . . . tore stuff" in her left knee. AR 42. She feels "numbness and burning and just a lot of pain" in the bottom of both her feet. Id. Her medications give her diarrhea at least four times a week. See AR 43, 51. Her memory problems also keep her from working; for example, she started her car then forgot to turn it off. See AR 43-44. She has dizzy spells, although she has not fallen. See AR 48. If she writes for too long, her hands go numb and she has sciatica down both hips, each of which

prevents her from working. See AR 50.

In May and November 2013, Plaintiff completed disability reports in which she alleged that her family had to remind her constantly to take her medications and pay her bills; she also stated that she could only stand and sit for short periods, that she was confused and disoriented when out in public by herself, and that her anxiety limited her ability to work. See AR 200, 203. In a similar report dated May 2014, she claimed that her daughter cleaned, cooked, and ran errands for her, and that she found it hard to get along with others. See AR 211.

The ALJ gave several reasons for rejecting Plaintiff's testimony: (1) the objective medical evidence did not support her allegations, (2) Plaintiff received routine and conservative treatment for her alleged impairments, (3) Plaintiff was non-compliant with her medication, and (4) Plaintiff was capable of performing daily activities and social interaction incommensurate with her allegations. See AR 25-26, 28-30.

## C. Analysis

The ALJ offered several specific, clear and convincing reasons for discrediting Plaintiff's symptom testimony.

First, the objective evidence did not corroborate Plaintiff's allegations. See Osenbrock v. Apfel, 240 F.3d 1157, 1166-67 (9th Cir. 2001) (holding that ALJ permissibly discredited claimant's subjective complaints where objective evidence did not corroborate severity of alleged symptoms). Plaintiff claimed that she had mental impairments like memory loss that prevented her from working. But Plaintiff provides no objective mental health findings to support these allegations. Plaintiff also claimed that her physical impairments prevented her from working. But the record does not support the severity of impairments claimed by Plaintiff. An August 2011 left knee image showed mild degenerative joint disease and a probable meniscus tear, and an August

2012 x-ray showed osteoarthritis. See AR 30, 434, 483. She had arthroscopic knee surgery in April 2012. See AR 405. A September 2012 left elbow x-ray showed minimal degenerative spurring with no acute findings. AR 30, 468. A physical examination in February 2014 was unremarkable: Plaintiff generated 20 pounds of force with both hands, had a slow gait, normal spine curvature, mildly decreased back range of motion with normal extension and lateral bending, mildly decreased range of motion of the left knee with normal extension, otherwise normal range of motion, and normal muscle bulk and tone (5/5 strength). See AR 31-32, 405-07.

Plaintiff's only response is to argue that a lack of objective medical evidence is not by itself a sufficient basis on which to reject her testimony. See JS at 7. While that is true, the ALJ provided other clear and convincing reasons to reject Plaintiff's testimony, as detailed below.

Plaintiff's conservative treatment for anxiety undermined her claim that her anxiety limited her ability to work. See Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."). In March 2014, Plaintiff denied having any outpatient or inpatient psychiatric treatment. See AR 25, 412. Rather, it appears that Plaintiff took anxiety medication "as needed." See AR 293. As of May 2013, Plaintiff took her anxiety medication "occasionally," and by March 2014, "rarely." See AR 286, 289, 455.

Similarly, Plaintiff received conservative treatment for her alleged physical symptoms. She had arthroscopic knee surgery in April 2012. See AR 366. Plaintiff does not cite to anywhere in the record indicating that further knee surgery or other surgery related to her alleged impairments was requested or performed. In fact, by June 2012 Plaintiff reported that her knee had improved, that physical therapy was helping, and that she was not currently taking any medication for her knee. AR 368. As for medication, Plaintiff took

narcotic medication around the time of her surgery in spring 2012, see AR 254, 369, 371, 374-75, 382, but as of February 2015, Plaintiff took only atenolol for hypertension, metformin for diabetes, aspirin, ibuprofen, oxazepam for anxiety, and glucose strips. See AR 438. In June 2013, she stated that she had never been prescribed crutches, a cane, a wheelchair, or a walker. See AR 193. Plaintiff stated at the hearing that she was taken off of Norco, but took Motrin and also Tramadol for pain but "tri[ed] not to" because she did not like the way it made her feel. AR 52-53. This conservative treatment undermines Plaintiff's claim of "constant pain all night keeping me awake." AR 188.

Finally, Plaintiff's reported daily activities were inconsistent with her alleged symptoms. Plaintiff reported that she had no difficulties with personal care, liked to go camping, did the laundry, washed the dishes, prepared dinner and cooked meals several times a week for one to one-and-a-half hours, took care of her husband (including meals and laundry) with her daughter's help, vacuumed, watered plants, went outside several times a day (including alone), could drive and shop, spent time with others, regularly went to the grocery store, Walmart, and her mother's house (before her mother moved in), babysat her grandchildren for an hour at a time (ranging between two years old and ten years old), and had no trouble getting along with others. See AR 49, 187-94, 413. The extent of these domestic activities supports the ALJ's conclusion that Plaintiff was less than fully credible when reporting the severity of her alleged disabling functional limitations. See Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1990) (finding that claimant's ability to "take care of her personal needs, prepare easy meals, do light housework, and shop for some groceries . . . may be seen as inconsistent with the presence of a condition which would preclude all work activity") (citing Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989)). Where, as here, a "claimant engages in daily activities inconsistent with the alleged symptoms," an ALJ may discredit his testimony of totally

disabling impairment. Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (citation omitted).[1]

On appellate review, the Court does not reweigh the hearing evidence regarding Plaintiff's credibility. Rather, this Court is limited to determining whether the ALJ properly identified clear and convincing reasons for discrediting Plaintiff's credibility, which the ALJ did in this case. See Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). It is the ALJ's responsibility to determine credibility and resolve conflicts or ambiguities in the evidence. See Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). If the ALJ's findings are supported by substantial evidence, as here, this Court may not engage in second-guessing. See Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002); Fair, 885 F.2d at 604. The above reasons constitute clear and convincing reasons for discounting Plaintiff's testimony regarding her symptoms and functionality.

### III.
### CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED and the action is DISMISSED with prejudice.

Dated: February 8, 2019

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge

---

[1] The ALJ also noted that Plaintiff was non-compliant with her medication. At least some of the time, Plaintiff claimed that she was not taking her medication because she could not afford it. See, e.g., AR 47, 446, 453. The Court does not need to decide whether this was a clear and convincing reason to reject Plaintiff's testimony.

7